The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Ira C. WILLIAMS, Appellee.

Supreme Court of Tennessee.

Sept. 27, 1976.

Richard W. Krieg, Knoxville, for appellant.

· Bland D. Winfrey, Arnold, Winfrey, McMurray & Russell, Lenior City, for appellee.

## OPINION

BROCK, Justice.

This is a dispute between an insurance company and its insured over which of them should pay the attorney's fee incurred in collecting a subrogation claim.

On March 18, 1972, the minor son of the appellee, Williams, was injured in an automobile accident caused by a third party. The appellant, Travelers, paid the sum of $1,000.00 under the Medical Pay provision of an insurance contract issued to the appellee. The policy provides that "[in] the event of payment . . . the Company shall be subrogated to all the insured's rights of recovery against any person or organization. . . ."

On June 16, 1972, Travelers advised the tortfeasor's insurer, State Farm Mutual Insurance Agency, of its right to be subrogated to a portion of Williams' claim and requested that State Farm protect this subrogation interest in the event settlement should be made. At the same time, Williams was notified that the Travelers Company would "handle [its] own subrogation." Some months later, State Farm acknowledged the correspondence, agreeing to honor the subrogation claim.

Williams filed his suit against the tortfeasor on March 5, 1973, which was concluded by a settlement executed on August 23, 1973. A State Farm draft, payable to Williams and the Travelers Company, is in the Registry of the Court.

Travelers has asserted its right to subrogation under the policy, a right which is not

disputed by the appellee. The only controversy is whether the insurer's recovery is to be measured by the entire amount paid by it, $1,000.00, or whether it should be reduced by one-third, the fraction claimed by the appellee's attorney as his fee.

In *Tennessee Farmers Mutual Ins. Co. v. Pritchett,* 54 Tenn.App. 410, 391 S.W.2d 671 (1969) (certiorari denied), the Court of Appeals held that an insurer subrogated to the rights of its insured against a tortfeasor must bear its pro rata portion of the insured's expenses in securing the recovery if it sits idly by and acquiesces in the action of the insured's attorney in its behalf. The decision was based upon an implied contract between the insurer and the attorney although some language in the opinion speaks in terms of a quasi contractual duty. In the words of the Chancellor, the case was:

> "Another glaring example of an insurance company sitting back on its haunches, doing nothing and waiting to get its share of a claim procured by attorneys, but not wanting to pay its share of an attorney's fee." Id. at 414, 391 S.W.2d at 674.

The appellant seeks to avoid the rule applied in *Pritchett* by contending that it did not sit idly by while the insured's attorney performed services for it; that, instead, it gave proper notice to the insured that it did not desire the participation of his attorney in its behalf.

The decisions in other jurisdictions are interesting, if not conclusive. Attorneys' fees have been awarded in at least one state even though the insurer expressly advised the insured's attorney not to represent it; the reason being that it claimed an interest in the judgment or settlement which he recovered. See *United Services Automobile Assn. v. Hills,* 172 Neb. 128, 109 N.W.2d 174, 2 A.L.R.3d 1422 (1961); *Krause v. State Farm Mutual Auto. Ins. Co.,* 184 Neb. 588, 169 N.W.2d 601 (1969). Both opinions explain this result as a consequence of the rule against splitting a cause of action. However, as the dissent in *Hills* points out, the rule does not prevent a plaintiff from suing for only a portion of his damages; he is merely precluded, if he does, from maintaining a later action for the omitted elements of damage.

Wisconsin has announced a rule, of prospective application, that the attorney must notify the subrogated insurer that it will be liable, pro rata, to him for his fee unless it elects to become a party to the action and is represented by counsel of its own choosing. *State Farm Mutual Automobile Ins. Co. v. Geline,* 48 Wis.2d 290, 179 N.W.2d 815 (1970).

Elsewhere, it appears that, when fees have been denied to the insured's attorney, the subrogee either realized no actual benefit from the attorney's services or took action of its own to protect its interest. *Carey v. Phoenix Ins. Co.,* 83 Conn. 690, 78 A. 426 (1910); *Pontiac Mutual County Fire & Lightning Ins. Co. v. Sheibley,* 279 Ill. 118, 116 N.E. 644 (1917); *Moyer & Moyer v. State Farm Mutual Ins. Co.,* 190 Neb. 174, 206 N.W.2d 644 (1973).

There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client. The normal rule in such cases is that he must look only to his client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others. *Hill v. Childress,* 18 Tenn. 514 (1837); *Moses v. Ocoee Bank,* 69 Tenn. 398 (1878); *Hume v. Commercial Bank,* 81 Tenn. 496 (1884); *Rogers v. O'Mary,* 95 Tenn. 514, 32 S.W. 462 (1895); *State ex rel. Banks v. Taylor,* 199 Tenn. 507, 287 S.W.2d 83 (1956); *Draper v. Draper,* 24 Tenn.App. 548, 147 S.W.2d 759 (1941); *Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857 (1946). But, an exception to this rule is made whenever one person, having assumed the risks and expense of litigation, has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common. In that event, the expenses of the action are borne by each participant according to his interest. *Bristol-Goodson Electric Light & Power Co. v. Bristol Gas, Electric Light and Power Co.,* 99 Tenn. 371, 42 S.W. 19 (1897); *City of*

*Bristol v. Bostwick,* 146 Tenn. 205, 240 S.W. 774 (1922); *Carmack v. Fidelity Bankers Trust Co.,* 180 Tenn. 571, 177 S.W.2d 351 (1944); *Pennington v. Divney,* 182 Tenn. 207, 185 S.W.2d 514 (1945); *Gilpin v. Burrage,* 188 Tenn. 80, 216 S.W.2d 732 (1949). The fairest and most efficient means of distributing these costs is thought to be to make them a charge upon the fund itself. This device, known as the "fund doctrine," was invented by courts of equity to prevent passive beneficiaries of the fund from being unjustly enriched. It is, therefore, never applied against persons who have employed counsel on their own account to represent their interests. See *Ensley v. Ensley,* 105 Tenn. 107, 58 S.W. 288 (1900); *City of Bristol v. Bostwick, supra; Cass v. Smith,* 146 Tenn. 218, 240 S.W. 778 (1921); *Leggett v. Missouri State Ins. Co.,* 342 S.W.2d 833 (Mo. 1960). Thus, the right to employ counsel of one's own choosing is preserved.

It is stated in Travelers' brief that "the defendant . . . wrote the plaintiff advising him not to protect Travelers' subrogation rights." A letter from a Travelers' claims representative was introduced into evidence. It shows that Williams was notified that the Company would "handle [its] own subrogation." Thus, Travelers contends that the appellee was put on notice not to protect its subrogation right; and, therefore, any services rendered by Attorney Winfrey under his contract with appellee, Williams, whereby Travelers was benefited were performed as a volunteer and Travelers should not be held liable for them.

Varied fact situations are disclosed by the reported cases dealing with this problem. We doubt the advisability of attempting to devise a single "rule" to govern all such cases, whatever the facts might be. Instead, each case, with its peculiar facts must be decided by applying general, fundamental principles of contract law.

■ Upon payment by the insurer of a loss, it becomes the real party in interest with respect to the subrogation claim, *National Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793 (1964), and

has the right to bring suit in the name of the insured, *Emmco Ins. Co. v. Beacon Mut. Indemnity Co.,* 204 Tenn. 540, 322 S.W.2d 226 (1959), or in its own name. Rule 17.01, Tennessee Rules of Civil Procedure. The insurer may intervene in an action brought by the insured against a wrongdoer and assert its subrogation claim therein. *Globe & Rutgers Fire Ins. Co. v. Cleveland,* 162 Tenn. 83, 34 S.W.2d 1059 (1931); but, it cannot bring suit against the wrongdoer after judgment has been rendered in the insured's action. Ibid. Accord *National Cordova Corp. v. City of Memphis, supra.* In short, the subrogation claim is the property of the insurer to deal with as it pleases so long as the rights of others, e. g., the insured or the wrongdoer, are not prejudiced.

■ It follows that whether or not an attorney is entitled to collect from the insurer a fee with respect to a subrogation claim depends upon whether an express or implied contract or a quasi contractual relation exists between them.

■ In the instant case, we find no evidence that an express or implied contract existed between the insurer and the insured's attorney. On the contrary, unlike the subrogee in the *Pritchett* case, the insurer here expressly stated to the insured that it would handle its own subrogation claim and that the insured was not to protect the same. A promise cannot be implied in fact in the face of a declaration to the contrary by the party to be charged. Any authority which the insured might otherwise have had to direct his attorney to prosecute the subrogation claim was expressly revoked.

■ Neither do we find evidence of unjust enrichment of the insurer from the services of the insured's attorney upon which a quasi or constructive contractual duty could be based. In our view, one is not unjustly enriched by a benefit "forced upon" him as the result of services voluntarily and officiously performed by another who has been expressly informed by the alleged promisor that his services are not desired.

We conclude that the facts of this case do not entitle the insured's attorney to receive any fee from the insurer with respect to the subrogation claim; he acted as a volunteer.

The judgment of the trial court is reversed, the appellant is awarded judgment against appellee for the sum of $1,000.00, with interest and costs; the original complaint filed by the appellee against the appellant is dismissed and costs taxed against appellee.

COOPER, C. J., and FONES, J., HENRY and HARBISON, JJ., concur.