FILED
07/05/2023
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 20, 2023 Session Heard at McKenzie[1]

## HAYES FAMILY PARTNERSHIP ET AL. v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Circuit Court for Madison County**
**No. 2C-21-85     Roy B. Morgan, Jr., Senior Judge**

—————————————————————

### No. W2022-01209-COA-R9-CV

—————————————————————

This is an insurance policy coverage dispute between Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") and its insured, Hayes Family Partnership ("Hayes"). At issue is property damage to a commercial building owned by Hayes and insured by Tennessee Farmers. The damage, which was in excess of two hundred thousand dollars, was caused by a third-party tortfeasor, George Hardey, who drove his vehicle into the insured building. Shortly after the accident and without the knowledge or consent of Tennessee Farmers, Hayes executed a release of all claims against Hardey and his insurer, Allstate Property & Casualty Company ("Allstate"), in consideration for the $25,000 policy limits paid by Allstate. After Hayes submitted its claim to Tennessee Farmers for benefits under its policy, Tennessee Farmers denied Hayes' claim based on Hayes' violations of material provisions in the insurance policy, including the provision that required Hayes to "do everything necessary to secure [Tennessee Farmers'] rights" and "do nothing after loss to impair them." The trial court denied Tennessee Farmers' Motion for Summary Judgment based, in part, on the "made whole" doctrine, and it ruled that "the release executed by Hayes in favor of the third-party tortfeasor George Hardey does not foreclose Hayes' right to pursue recovery from Tennessee Farmers." The trial court also reasoned that Tennessee Farmers may not avoid coverage "on the basis of breach of the insurance policy condition that its insured must do everything necessary to secure its rights and nothing to impair those rights, and Hayes['] release of Hardey." The trial court then granted Tennessee Farmers' motion for permission to file an interlocutory appeal, which we also granted. The dispositive issue on appeal is whether Hayes forfeited its right to coverage under the Tennessee Farmers' policy by, inter alia, releasing all of Hayes' claims against the third-party tortfeasor and his insurance company without the knowledge or consent of Tennessee Farmers. We have determined that Hayes materially breached the insurance policy by releasing the third-party tortfeasor and his insurer from liability without the consent of

_____

[1] Oral argument was heard on the campus of Bethel University in McKenzie, Tennessee.

Tennessee Farmers; therefore, Tennessee Farmers was entitled to summary judgment as a matter of law. Accordingly, we reverse the decision of the trial court and remand with instructions to summarily dismiss the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Charles L. Trotter, Jr., Huntingdon, Tennessee, and Michael R. Campbell, Chattanooga, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company.

Randall N. Songstad, Memphis, Tennessee, for the appellee, Hayes Family Partnership.

Drayton Durell Berkley, Memphis, Tennessee, for the appellee, P&G Construction Consultants, LLC.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

Hayes maintained an insurance policy with Tennessee Farmers that covered a commercial building owned by Hayes located at 464 North Parkway in Jackson, Tennessee. The Tennessee Farmers commercial policy issued to Hayes, CP 3113867, provided property damage coverage of $965,000, subject to the terms and conditions of the policy.

On February 24, 2020, George Hardey, a motorist, damaged the commercial building with his vehicle. Mr. Hardey was insured by Allstate Property & Casualty Company ("Allstate") under an automobile insurance policy that provided $25,000 in property damage liability coverage. On March 5, 2020, Hayes reported the incident to Tennessee Farmers.

On March 12, 2020, Hayes hired P&G Construction Consultants, LLC, ("P&G") to repair its building and, without Tennessee Farmers' knowledge, Hayes executed an assignment of its rights under the Tennessee Farmers' insurance policy to P&G. The assignment transferred to P&G "all insurance rights, benefits, and causes of action under any applicable insurance policies."

On May 13, 2020, Brad M. Hayes, a principal of Hayes, executed a release of claims against Hardey and Allstate in consideration for the $25,000 policy limits paid by Allstate. In pertinent part, the release reads:

**PROPERTY DAMAGE ONLY RELEASE**

For the sole and only consideration of Twenty-Five Thousand Dollars ($25,000), the receipt of which is hereby acknowledged, I discharge any and all property damage claims which Hayes Family Partnership may have against George Hardey, his or her heirs, executors, administrators, agents, and assigns, and all other persons, firms or corporations for properly damage suffered by me arising from a vehicle collision which occurred on or about 24th day of February 2020 at or near 464 N Pkwy, Jackson, TN.

I hereby acknowledge and agree that it is the purpose and intent of this instrument to constitute a full and final settlement of all property damage claims I may have arising from the said accident up to and including the date hereof.

I understand that the parties hereby released admit no liability of any sort by reason of said accident and that said payment and settlement in compromise is made to terminate further controversy respecting all claims for property damages that I have heretofore asserted or that I or my personal representative might hereafter assert because of the said accident.

This Release expressly reserves to [sic] all other rights to pursue legal remedies against the other, except as to the property damage of Hayes Family Partnership.

Tennessee Farmers was unaware of the release when it was executed and never consented to the release.

On June 15, 2020, Hayes executed and delivered to Tennessee Farmers a sworn statement in partial proof of loss, claiming damages in the amount of $207,928.70. On November 4, 2020, Randall Songstad, acting in his capacity as attorney for Hayes, sent a written demand for Tennessee Farmers to participate in the appraisal process called for in the policy.

By letter dated March 09, 2021, Randel Higdon, Regional Claims Manager for Tennessee Farmers, notified Hayes that Tennessee Farmers had determined that there was "no coverage under the policy for the claim" due to Hayes' violations of material provisions in the insurance policy. Furthermore, because there was no coverage, Tennessee Farmers declined to participate in the appraisal process. After quoting the section of the policy titled "TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US," Mr. Higdon's response went on to state:

> [Tennessee Farmers] never waived its right of subrogation, nor did it participate in or consent to settlement negotiations you had with Mr.

Hardey's automobile insurance carrier Allstate Property and Casualty Insurance Company.

The Partnership breached the foregoing provisions of the policy when it accepted $25,000.00 and gave George Hardey a "Property Damage Only Release" for "any and all property damage claims" in connection with this matter. The release cuts off Tennessee Farmers Mutual Insurance Company's right to proceed by subrogation against Mr. Hardey for any sums Tennessee Farmers might have paid you under your policy. Accordingly, the Partnership forfeited any right of recovery under the policy.

Tennessee Farmers also asserted that Hayes materially breached the contract of insurance by assigning to P&G its rights under the insurance policy contract.

On April 16, 2021, Hayes commenced this action by filing a "Petition to Enforce Appraisal" in the Madison County Circuit Court. On July 6, 2021, Tennessee Farmers filed an answer to which it attached commercial policy CP 3113867.

In its answer, Tennessee Farmers asserted that Hayes and/or P&G violated the terms of the policy by settling Hayes' claim against Mr. Hardey. Tennessee Farmers disagreed with Hayes on the amount of the alleged loss and asserted that Hayes had violated the terms of the policy by assigning its rights to P&G.

On October 12, 2021, Tennessee Farmers filed a motion to dismiss for insufficiency of process under Tennessee Rule of Civil Procedure 12.02(4); a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12.02(6); and a motion for judgment on the pleadings under Rule 12.03, with attachments, to be treated as a motion for summary judgment under Rule 56. Tennessee Farmers also asserted that there was no such pleading as a "Petition to Enforce Appraisal."

Tennessee Farmers also filed a motion to add P&G as a necessary and indispensable party under Rule 19 or, in the alternative, to dismiss the action under Rule 12.02(7) for Hayes' failure to join P&G. The motion was supported by exhibits demonstrating that Hayes had assigned its rights to its insurance claim to P&G.

In Hayes' timely filed response to Tennessee Farmers' motions, Hayes requested, in part, that the court treat the Petition to Enforce Appraisal as a complaint for declaratory judgment. Hayes opposed Tennessee Farmers' other motions as well, asserting that Tennessee Farmers had no subrogation rights because Hayes had not been made whole by the settlement of its claim against Mr. Hardey.

- 4 -

The trial court denied the motions to dismiss; however, the court granted Tennessee Farmers' motion to add P&G as an indispensable party.[2] Significant to the issues on appeal, the trial court also denied Tennessee Farmers' motion for judgment on the pleadings, which it treated as a motion for summary judgment, finding that:

> the made whole doctrine applies so that the release executed by Hayes in favor of the third-party tortfeasor George Hardey does not foreclose Hayes' right to pursue recovery from Tennessee Farmers under the commercial policy. The Court finds that Tennessee Farmers may not avoid coverage for Hayes on the basis of breach of the insurance policy condition that its insured must do everything necessary to secure its rights and nothing to impair those rights, and Hayes['] release of Hardey.

After its motion for summary judgment was denied, Tennessee Farmers filed a Tennessee Rule of Appellate Procedure 9 motion for permission to file an interlocutory appeal. The trial court granted the motion and, as required by Rule 9, stated the specific issue certified for appeal.[3] Then this court granted permission for the interlocutory appeal to proceed. This appeal followed.

## ISSUES

While the parties have articulated several issues,[4] the specific Rule 9 issue certified for appeal, as stated by the trial court, reads as follows:

---

[2] P&G made an appearance and joined in the pleadings as an additional plaintiff and counter defendant.

[3] As mandated by Tennessee Rule of Appellate Procedure 9(b): "When the trial court is of the opinion that an order, not appealable as of right, is nonetheless appealable, **the trial court shall state in writing the specific issue or issues the court is certifying for appeal**[.]" (Emphasis added).

[4] The issue as stated by Tennessee Farmers reads:

Whether an insured can rely on the "made whole" doctrine to recover under its property insurance policy for property damage that was caused by the negligence of a third-party where the insured settled and released its claim against the third-party tortfeasor without the insurer's consent?

The issues as stated by Hayes and joined in by P&G read as follows:

1. The March 12, 2020 post-loss assignment is valid.

2. UM policies incorporate statutory and contractual subrogation.

- 5 -

Whether an insured may, in derogation of policy requirements to secure the insurer's rights against third-party tortfeasors, settle and release the insured's claim against a third-party tortfeasor without the knowledge or consent of the insurer by asserting reliance upon the made whole doctrine, or whether to the contrary the release of tortfeasor George Hardey by the insured, Hayes Family Partnership (Hayes), on May 13, 2020, without the knowledge or consent of Tennessee Farmers, which foreclosed Tennessee Farmers rights to recover from tortfeasor Hardey, was a material breach of the insurance policy contract requiring Hayes "to secure (Tennessee Farmers) rights and . . . do nothing after loss to impair them", [sic] voiding coverage for Hayes.

### STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is

---

3. Property damages policies incorporate contractual subrogation only.

4. Contractual subrogation is subject to the made whole rule.

directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

### I. CONTRACTUAL RIGHTS OF RECOVERY AGAINST OTHERS

Although Tennessee Farmers filed several motions to dismiss, the one at issue is its motion for summary judgment. In its motion, Tennessee Farmers framed the issue as: "whether extinguishment of [Tennessee Farmers'] subrogation interest through the release of George Hardey by the Hayes Family Partnership forfeits the Partnership's coverage under the policy in this case."

The trial court denied Tennessee Farmers' motion for summary judgment on two grounds. One was the finding that "Tennessee Farmers may not avoid coverage for Hayes on the basis of breach of the insurance policy condition that its insured must do everything necessary to secure its rights and nothing to impair those rights, and Hayes['] release of Hardey." Tennessee Farmers contends this was error. We agree.

Because the material facts relevant to this motion are not at issue, the legal issue is ripe for determination. *See* Tenn. R. Civ. P. 56.04.

Tennessee Farmers relied in principal part on the following conditions under the policy in asserting that it was entitled to summary judgment:

COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. **That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them**. But you may waive your rights against another party in writing:

1. Prior to loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

(Emphasis added).

We have determined that Hayes materially breached the policy of insurance by impairing Tennessee Farmers' subrogation rights against Hardey and Allstate. Our decision is principally based on the reasoning set forth in three cases: *Kentucky National Insurance Co. v. Gardner*, 6 S.W.3d 493 (Tenn. Ct. App. 1999); *Aetna Casualty & Surety Co. v. Tennessee Farmers Mutual Insurance Co.*, 867 S.W.2d 321 (Tenn. Ct. App. 1993), and *Doss v. Tennessee Farmers Mutual Insurance Co.*, No. M2000-01971-COA-R3-CV, 2001 WL 1565883 (Tenn. Ct. App. Dec. 10, 2001), which we discuss in turn.

In *Gardner*, the property insurer, Kentucky National Insurance Company, sought a declaratory judgment that the insureds, the Gardners, extinguished Kentucky National's subrogation rights by dismissing their civil action against a third party. *Id.* at 495. The trial court ruled in favor of the Gardners, *id.* at 495, but on appeal we held that the Gardners materially breached the policy by impairing the insurer's subrogation rights by allowing the tort action against the alleged tortfeasor to be dismissed with prejudice, thereby forfeiting their rights under the policy, *id.* at 498. We reasoned that the trial court was required to "**enforce a provision of the insurance policy which prohibited the Gardners from taking any action after a loss that would impair Kentucky National's subrogation rights**." *Id.* at 495 (emphasis added).

The relevant facts in that case are that the Gardners owned a commercial building for which Kentucky National issued a commercial property insurance policy that provided coverage for "loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused" that included the damages at issue. *Id.* Like the policy at issue here, the policy in *Gardner* contained a provision that required the Gardners to "do everything necessary to secure [Kentucky National's subrogation] rights" and to "do nothing after loss to impair them." *Id.*

In late 1994, the Gardners contracted with S.A. Perry Heating and Cooling ("Perry") to install new HVAC units on the roof of their building. *Id.* Prior to that time, the only HVAC unit was located on the ground floor of the building. *Id.* Two days after Perry finished installing the HVAC units on the roof, the building experienced a significant rainfall. *Id.* Water collected on the roof and entered the building around the new HVAC units, causing substantial damage to both the structure and contents of the building. *Id.* The Gardners subsequently concluded that Perry was responsible for the damage. *Id.*

In April 1995, Perry sued the Gardners for nonpayment of the HVAC installation, and the Gardners countersued, claiming that Perry negligently installed the HVAC units, which negligence caused the damage to their building. *Id.* at 496. In the interim, the Gardners also contacted Kentucky National to report the incident; however, Kentucky National was never directly involved in the litigation between the Gardners and Perry. *Id.* at 495–96.

Over the next few months, the Gardners filed a claim with Kentucky National, and counsel for the Gardners, Mark Henderson, communicated with the insurance company. *Id.* When Kentucky National's counsel, Larry McMillan, learned of the pending litigation between the Gardners and Perry, he feared that the lawsuit might impair Kentucky National's subrogation rights. *Id.* at 496. Accordingly, McMillan asked Kentucky National to withhold any payments on the Gardners' claim until he was able to review the claim and speak with the Gardners' attorney. *Id.* Kentucky National issued payment to the Gardners in the amount of $8,250 following numerous communications and a complaint by the Gardners against Kentucky National with the Tennessee Department of Commerce and Insurance based upon Kentucky National's failure to pay the Gardners' claim. *Id.* However, the $8,250 payment covered only the temporary repairs that had been made to the building; the total damage exceeded $110,000. *Id.* at 497. Kentucky National's policy provided coverage of only $65,000. *Id.*

On April 30, 1996, Kentucky National learned that the Gardners had permitted their counterclaim against Perry to be dismissed with prejudice. *Id.* The circuit court's order, entered on March 1, 1996, indicated that the case was dismissed due to the Gardners' failure to comply with court orders compelling discovery. *Id.* Thus, the trial court's order dismissing the action operated as an adjudication upon the merits, and the order of dismissal became final on May 6, 1996. *Id.*

Taking the position that the dismissal of the Gardners' lawsuit had impaired its subrogation rights, Kentucky National commenced an action for declaratory relief in which it sought a determination that it owed no further obligation to the Gardners under the insurance policy due to the Gardners' breach of the policy's subrogation provision. The Gardners answered the complaint and filed counterclaims seeking declaratory relief, damages, prejudgment interest, and the imposition of a bad faith penalty.

The trial court entered a judgment in favor of the Gardners. *Id.* In pertinent part, the trial court ruled that "Kentucky National, by its inaction, failed to protect its own subrogation rights." *Id.* Kentucky National appealed, raising numerous issues. *Id.* The issue relevant here is "whether the trial court erred in failing to find that the Gardners materially breached the policy by taking action which impaired Kentucky National's subrogation rights." *Id.*

On appeal, this court ruled in favor of Kentucky National, reasoning that "the Gardners impaired [Kentucky National's] subrogation rights by permitting their action against S.A. Perry to be dismissed with prejudice." *Id.* While the Gardners did not execute a formal release relieving Perry of liability for its negligent installation of the HVAC units, we reasoned that they achieved the same result by permitting their action against Perry to be dismissed with prejudice. *Id.* at 498 (citing *Globe & Rutgers Fire Ins. Co. v. Cleveland*, 34 S.W.2d 1059, 1061 (Tenn. 1931) (indicating that insurance carrier's subrogation rights may be lost or destroyed when insured executes release in favor of tortfeasor or when insured pursues lawsuit against tortfeasor such as to exhaust cause of action)). Thus, "[o]nce the Gardners' action was dismissed with prejudice, Kentucky National lost its right to pursue a subrogation claim against S.A. Perry." *Id.* (citing *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, 590 (Tenn. 1976)). Accordingly, we concluded that the Gardners breached the provision of the insurance policy which prohibited them from taking any action after a loss that would impair Kentucky National's subrogation rights. *Id.* As a consequence, we reversed the trial court's judgment. *Id.* at 495.

Our decision in *Gardner* was based in part on *Aetna Casualty & Surety Co. v. Tennessee Farmers Mutual Insurance Co.* Similar to the case at bar, the dispositive issue in *Aetna* was whether "the release of the tortfeasor by Tennessee Farmers' insured[,] which destroyed Tennessee Farmers' right of subrogation[,] release[d] Tennessee Farmers from liability to its insured under the uninsured motorist coverage of its policy." 867 S.W.2d at 322.

In *Aetna*, the Tennessee Farmers policy prohibited the insured, Larry Walker, from taking any action after a loss which would prejudice the insurance carrier's subrogation rights. *Id.* at 323. Contrary to this provision and without Tennessee Farmers' consent, Mr. Walker executed and delivered to the tortfeasor a full and complete release of all claims arising out of the accident in question. *Id.* at 322. In the suit that followed, Aetna sought contribution for monies paid under their uninsured motorist policy to Mr. Walker. *Id.* The defendant, Tennessee Farmers, had the primary uninsured motorist coverage, and Aetna was the excess carrier. *Id.* Tennessee Farmers declined to pay under their policy because of the release that Mr. Walker executed. *Id.*

After a hearing on stipulated facts, the trial court determined that, by executing the release, Aetna and the Walkers destroyed Tennessee Farmers' right of subrogation and that

by doing so they forfeited their rights of recovery against Tennessee Farmers. *Id*. at 322. We affirmed, explaining in pertinent part:

> It seems apparent that the [sic] both the statutory scheme and the policy of insurance contemplate that the insurance carrier [Tennessee Farmers] shall have all rights of recovery against a tortfeasor that the insured would have up to the amounts paid by the insurer. It seems to logically follow, therefore, that if the insured releases the tortfeasor thus destroying the insurance carrier's subrogation rights, then the insured has not only breached the contract of insurance with the insurer but has also destroyed the insurer's statutory rights. *See Hickory Springs Mfg. Co. v. Evans*, 541 S.W.2d 97 (Tenn. 1976). **We are of the opinion that in so doing, the insured forfeits any rights of recovery against the insurance carrier.** While our research has revealed no cases in this jurisdiction directly addressing this issue, it is clear that if an insured destroys the insurer's subrogation rights after payment, the insured is liable to the insurer for payments made by the insurer. *See Motors Ins. Corp. v. Blakemore*, 584 S.W.2d 204 (Tenn. Ct. App. 1978).

*Id.* at 323 (emphasis added). We conclude that the same legal consequence occurs if the insured destroys the insurer's subrogation rights before payment, which is the case here.

Similar reasoning can be found in *Doss v. Tennessee Farmers*, which involved Tennessee Farmers' denial of the insured's claim for unpaid coverage and subrogation claim for benefits previously paid to the insured, Vondal Doss. 2001 WL 1565883, at *1. The relevant facts are as follows. The plaintiff/appellant, Ms. Doss, suffered a personal injury as a result of a motor vehicle accident in which she was a passenger in a car owned and driven by her daughter, Angie Ford. *Id.* The accident occurred when a truck driven by Jimmy Gotcher turned into the path of Ms. Ford's vehicle. *Id.* Mr. Gotcher was insured with Farmers Insurance Exchange. *Id.*

Ms. Doss was eligible for up to $5,000 in medical benefits under her Tennessee Farmers' policy and Ms. Ford's policy, for a total of up to $10,000. *Id.* Ms. Doss received $3,000 from Tennessee Farmers under the two policies, leaving $7,000 in coverage unclaimed. *Id.* Then, without the knowledge or consent of Tennessee Farmers, Ms. Doss released Mr. Gotcher from any liability arising from the accident in exchange for $60,000. *Id.* at *2.

Thereafter, Ms. Doss filed suit against Tennessee Farmers, alleging breach of contract for failure to pay the remaining $7,000 pursuant to the medical payment provision of the two insurance policies. *Id*. In its answer, Tennessee Farmers not only denied that Ms. Doss was entitled to additional coverage, but it also asserted a counterclaim for reimbursement of the $3,000 it had already paid. *Id.*

- 11 -

The trial court found Ms. Doss was not made whole by the $60,000 settlement; however, the court held that "Tennessee Farmers was under no obligation to make additional medical payments to [Ms. Doss] since [Tennessee Farmers] did not consent to the settlement and was not consulted." *Id*. at *2. Thus, the court dismissed the complaint and the counter-complaint. *Id.*

In the appeal that followed, we held that a "consequence of the [Doss-Gotcher] settlement [was] that [Ms. Doss]'s ability to recover additional compensation from Tennessee Farmers was precluded or forfeited." *Id.* at 3. As we further explained, "If an insured destroys an insurer's subrogation rights after payment, the insured forfeits any rights of recovery against the insurance carrier." *Id.* (citing *Aetna*, 867 S.W.2d at 323). Based on the above reasoning, we affirmed the trial court's decision. *Id.*

Having considered the above authorities and the unambiguous language in Hayes' policy with Tennessee Farmers, we hold that Hayes and P&G's ability to recover any compensation from Tennessee Farmers was forfeited as a consequence of Hayes' settlement with Hardey. *See Gardner*, 6 S.W.3d at 498; *Aetna*, 867 S.W.2d at 323; *Doss*, 2001 WL 1565883, at *4. Accordingly, we reverse the decision of the trial court and hold that Tennessee Farmers is relieved of any and all liability to Hayes and/or P&G due to the material breach of the policy by Hayes.

## II. THE MADE WHOLE DOCTRINE

As stated, the trial court denied Tennessee Farmers' motion for summary judgment on two grounds. The second ground was its finding that "the made whole doctrine applie[d]." Tennessee Farmers contends this was error. We agree based on the fact that the foregoing material breach of the Tennessee Farmers policy by Hayes constitutes a forfeiture of any and all rights Hayes may have had under the Tennessee Farmers policy. *See Gardner*, 6 S.W.3d at 498; *Aetna*, 867 S.W.2d at 323; *Doss*, 2001 WL 1565883, at *4.

Moreover, the made whole doctrine is inapplicable because Hayes forfeited any and all rights it may have had under the policy and because Tennessee Farmers has not remitted any payments to or for the benefit of Hayes and is not seeking to recover any damages from Hardey or his insurer.

## III. OTHER ISSUES

Because of the above rulings, the remaining issues are pretermitted as moot.

## IN CONCLUSION

For the foregoing reasons, we reverse the trial court's decision and remand with instructions to summarily dismiss all claims against Tennessee Farmers. Costs of appeal

are assessed, jointly and severally, against the appellees, Hayes Family Partnership and P&G Construction Consultants, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.